**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| R.L.K., *by her next friends, individually and* *on behalf of all others similarly situated*, | : : : | |
| *Plaintiff*, | : : : | Case No. 1:23-cv-171 |
| vs. | : : : | Judge Jeffery P. Hopkins |
| INDIAN HILL EXEMPTED VILLAGE SCHOOL DISTRICT, | : : : | |
| *Defendant*. | : | |

## OPINION & ORDER

Plaintiff R.L.K.'s parents, Rachel and Michael Katz, are unhappy with her schooling in the Indian Hill School District. In March 2023, they sued the school district on her behalf, to bring attention to the district's alleged failure to accommodate R.L.K.'s attention-deficit disorder and anxiety. Now, they seek class certification to represent a class of students denied accommodations by Indian Hill. Because R.L.K. fails to adequately define the proposed class and also fails to satisfy the Rule 23 requirement of commonality, her motion for class certification is **DENIED**.

## I. FACTUAL BACKGROUND

R.L.K. is a seventh grader enrolled in the Indian Hill public school system. Amended Compl., Doc. 6. Although she has kept up with her peers in many ways during her schooling, she has nevertheless struggled in some respects. As relevant here, her difficulties began in September 2018 when she was a first grader at Indian Hill. At that time, her parents enrolled her at Queen City Counseling because of concerns over her emotional development. Doc. 6,

¶ 15. The following spring, a psychiatrist diagnosed R.L.K. with attention deficit disorder (ADD) and R.L.K. also began counseling for anxiety. *Id.*, ¶ 18–19.

R.L.K.'s parents began communicating with her teachers about her difficulties when she was in second grade. In January of that year, R.L.K's math grade dropped—prompting Ms. Katz to inform R.L.K.'s second-grade teacher of R.L.K.'s ADD and anxiety diagnoses and discuss the possibility of testing R.L.K. for purposes of establishing an education plan under Section 504 of the Rehabilitation Act of 1973 (a "504 Plan"). *Id.* at PageID 59. In an April 1, 2020 meeting regarding a possible 504 Plan—which occurred shortly after Indian Hill stopped in-person service due to COVID-19—the school district refused to go forward with a 504 evaluation, but developed a Student Intervention Plan to be implemented when Indian Hill returned to in-person learning. Answer ¶ 32, Doc. 4; Response to Motion for Class Certification, Doc. 22, PageID 427. Later that year, in June 2020, R.L.K.'s parents met with administrators at Indian Hill to provide them a letter from R.L.K.'s pediatrician stating that she had learning disabilities. *Id.,* ¶ 56.

In the fall of 2020, when R.L.K. started third grade, students at Indian Hill had the option to return in-person or continue with fully virtual learning. R.L.K.'s family chose for her not to return in-person. Doc. 22, PageID 428. That year, Ms. Katz communicated further with R.L.K's teachers, raising concerns that timed tests triggered R.L.K.'s anxiety. Doc. 6, ¶ 39. That year, R.L.K.'s parents also opted out of timed state testing. *Id.,* ¶ 43.

R.L.K. returned to in-person learning in fall of 2021, her fourth-grade year. Following a disciplinary incident in October of that year, R.L.K.'s parents renewed their request that she be evaluated for learning disabilities. On November 3, 2021, they met with school officials to plan an evaluation of R.L.K. to determine whether she was entitled to accommodations under

the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"). Doc. 22, PageID 429. At the end of that evaluation, the team responsible for evaluating R.L.K. determined she did not meet eligibility criteria for a 504 Plan. *Id.*

Undeterred, R.L.K.'s parents continued to press their case for classroom and testing accommodations. On January 24, 2022, Cincinnati Children's Hospital Medical Center ("CCHMC") conducted a psychological evaluation of R.L.K. Doc. 6, ¶¶ 51–53. On February 14, 2022, R.L.K.'s parents received the report (the "CCHMC Report"). *Id.,* ¶ 53. They then sent the report to Indian Hill Elementary School, which convened a meeting on March 10, 2022 to again discuss a possible 504 Plan for R.L.K. Doc. 22, PageID 429. The meeting included one of R.L.K.'s parents, a school-based counselor from CCHMC, the Indian Hill Elementary Principal, the Indian Hill Elementary school counselor, and an Indian Hill Elementary classroom teacher. *Id.* This time, Indian Hill deemed R.L.K. eligible for a 504 Plan. The group developed a plan during that meeting, and all present, including R.L.K.'s parents, signed in agreement with the plan. *Id.*

The parties disagree, however, over whether the Plan was followed. R.L.K. asserts that Defendants "failed to implement" the plan, including an incident in April when the school "forced Plaintiff to take a math test with a timer" and a separate incident in May where the school failed to make substitute teachers aware of the terms of the 504 Plan. Doc. 6, ¶¶ 63, 66, 68. Indian Hill responds that it is aware of "only a single instance when the Section 504 Plan was not carried out with fidelity," which is the May incident involving the substitute teachers, who Indian Hill concedes failed to "allow [R.L.K.] to take a break as was allowed by the Section 504 plan." Doc. 22, PageID 429. The next day, Indian Hill Elementary Principal Whitney Buell emailed Ms. Katz to apologize and tell her that Indian Hill would

"work to ensure that this does not happen again." Doc. 6, ¶ 69. Indian Hill represents it acted immediately to make sure future substitutes would be made aware of R.L.K.'s 504 Plan. Doc. 22, PageID 429. Four days later, R.L.K.'s parents asked that the 504 Plan be revised. Doc. 6, ¶ 71.

On August 31, 2022, the beginning of R.L.K.'s fifth-grade year, counsel for R.L.K. contacted Indian Hill asserting that R.L.K. suffered from various learning disabilities and that her healthcare providers recommended she be granted additional accommodations. *Id.,* ¶ 75. Her parents declined, however, an invitation from an Indian Hill school counselor to meet with school officials responsible for R.L.K.'s 504 Plan at the beginning of her fifth-grade year. Doc. 22, PageID 430. Eventually, on December 9, 2022, R.L.K.'s parents met with school officials regarding the 504 Plan. Doc. 6, ¶ 79; Doc. 22, PageID 430. After that meeting, Indian Hill's legal counsel emailed R.L.K.'s legal counsel to say it understood R.L.K.'s parents were not interested in revising R.L.K.'s 504 Plan. Doc. 22, PageID 430. It also offered to conduct another IDEA assessment, in which the school would consider information from private evaluations of R.L.K. conducted at her parents' request. *Id.* R.L.K.'s parents did not substantively respond to this offer. *Id.*

From this point on, the parties had no productive communications regarding accommodations for R.L.K. The initial complaint in the instant case was filed on March 26, 2023. Doc. 1. In the fall of 2023, R.L.K. began sixth grade at Indian Hill Middle School. The counselor there, Nick Carpenter, emailed R.L.K.'s parents to set up a meeting to review her 504 Plan at that time, but R.L.K.'s counsel characterized those efforts as "settlement negotiations" and the meeting never took place. Doc. 22, PageID 430. Mr. Carpenter contacted R.L.K.'s parents again in June of 2024, to discuss revising and approving R.L.K.'s

504 Plan in preparation for her seventh-grade year. *See* Exhibit to Affidavit of Michael Katz, Doc. 24, PageID 626.

## II.     PROCEDURAL BACKGROUND

R.L.K. filed her complaint initiating this case in March 2023. The complaint is a class action complaint alleging that Indian Hill has failed to provide accommodations to students with disabilities, and that such failure violates Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* and Title II of the Americans with Disabilities Act of 1973, 42 U.S.C. § 12131. Doc. 6, ¶ 1.

The parties completed class discovery in May 2024. *See* Amended Scheduling Order, Doc. 12. R.L.K. filed the Motion for Class Certification presently before the Court on June 24, 2024. Doc. 16.

## III.    STANDARD OF REVIEW

"Federal Rule of Civil Procedure 23 allows a plaintiff to pursue claims on behalf of a class of similarly situated individuals if she demonstrates that she is part of the class and possesses the same interest and suffers the same injury as the class members." *Davis v. Cintas Corp.*, 717 F.3d 476, 483 (6th Cir. 2013) (citation and internal quotation marks omitted). In order to proceed with a class action, a plaintiff must "meet a series of conditions laid out in Rule 23 to ensure, first, that she is an appropriate representative for absent class members, and, second, that her claim is appropriate for classwide resolution." *Id.* The bulk of the class-certification analysis "proceeds in two steps." *Id.* First, the plaintiff must meet the four requirements set out in Rule 23(a). The plaintiff must establish that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

If a plaintiff fails to satisfy any one of these four requirements, "her class claim fails at the threshold." *Davis*, 717 F.3d at 483. If a plaintiff satisfies these requirements, the plaintiff must then establish that her case fits into one of the three categories set forth under Federal Rule of Civil Procedure 23(b), which specifies the types of cases that are appropriate for class-wide resolution. *Id.* at 483–84.

To summarize: "[A] plaintiff must show that she meets all four Rule 23(a) criteria, and that her case falls into at least one of the four Rule 23(b) categories. If she fails to satisfy any of these requirements, class certification is not appropriate." *Id.* at 484.

In assessing whether a plaintiff has satisfied these requirements, the Court must conduct "a rigorous analysis," which may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 484 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)). The Court is permitted to "probe behind the pleadings . . . and touch aspects of the merits." *Id.* (quoting *Falcon*, 457 U.S. at 160 and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)) (alteration omitted).

## IV. LAW & ANALYSIS

Class-action litigation is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348–49 (citation and internal quotation marks omitted). The Rule 23 requirements serve the important function, then, of "effectively limit[ing] the class claims to those fairly

encompassed by the named plaintiff's claims." *Id.* at 349 (quoting *Falcon*, 457 U.S. at 156) (internal quotation marks omitted).

With these principles in mind, the Court proceeds to determine whether R.L.K. has satisfied the rather stringent Rule 23 requirements.

### A. Plaintiff's proposed class

Plaintiff seeks certification of the following class:

> Defendant's current and former students within the four years preceding the filing of this Complaint: (a) between the ages of five and twenty-two years old; (b) who suffer[] or suffered from one or more qualifying disability that substantially affects or affected one or more major life activity; (c) who are or were entitled to one or more accommodations; and (d) to whom Defendant has denied accommodations pursuant to a uniformly applied official policy or policies, an unofficial yet well-defined practice or practices, or a common mode of exercising discretion to deny the same.

Doc. 6, PageID 73.

Before analyzing the Rule 23 factors, the Court "must first consider whether a precisely defined class exists and whether the named plaintiff[] [is a] member[] of the proposed class." *Edwards v. McCormick*, 196 F.R.D. 487, 490–91 (S.D. Ohio 2000) (Marbley, J.). A proper class definition must: "(1) specify[] a particular group at a particular time frame and location who were harmed in a particular way; and (2) defin[e] the class such that a court can ascertain its membership in some objective manner." *Id.* at 491. Adequately defining the proposed class is a separate requirement from those requirements set out in Rule 23(a) and (b). Where the class is not adequately defined, "the court need not proceed to a full Rule 23 analysis." *Id.*

Class certification is not appropriate where determining membership in the class would "require a mini-hearing on the merits of each case." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. Oct. 4, 1995). *See also Edwards*, 196 F.R.D. at 491. To put it another way, "a class should not be certified where extensive factual inquires are required to determine

whether individuals are members of a proposed class, and where a plaintiff could prove his own claim but, in doing so, 'not necessarily have proved anybody else's claim.'" *Napier v. Laurel County, Ky.*, 2008 WL 544468 at *6 (E.D. Ky. 2008) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)).

Applying these principles, the Court concludes R.L.K. has, at the outset, failed to adequately define her proposed class. She defines the class to include Indian Hill students who "were entitled to one or more accommodations" but who were "denied accommodations . . . ." Doc. 6, PageID 73. Determining whether any particular student was "entitled to one or more accommodations" requires individualized inquiry. It would require a mini-hearing on each request for accommodations; proving one student's entitlement to certain accommodations would not prove any other student's entitlement to different accommodations.

Acknowledging this shortcoming, the Court finds it unnecessary to evaluate each of the Rule 23(a) factors in detail. Instead, the Court first sets out principles relevant to analysis of class certification in the context of claims based on failure of a school district to provide required accommodations to students with disabilities. These principles point to the inescapable conclusion that R.L.K. failed to satisfy the Rule 23(a) commonality requirement.

## B. Commonality – Failure to identify uniformly applied policy

Class-action litigation regarding a school district's failure to comply with statutory requirements for educating students with disabilities presents an inherent contradiction. The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Yamasaki*, 442 U.S. at 700–01, which is appropriate where multiple plaintiffs have "suffered the same injury" so their claims can be

efficiently resolved in a single action. *Dukes*, 564 U.S. at 349–50. Class treatment relies on a group of plaintiffs being *similar* in some relevant respect. The statutory scheme governing schools' education of students with disabilities, on the other hand, requires schools to serve the disparate needs of each student; the language of individual difference is everywhere in this scheme. For example, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that "[n]o otherwise qualified individual with a disability shall . . . solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Section 504 "requires that public schools provide reasonable accommodations to students with disabilities" and to satisfy its requirements, a student with a disability may receive a plan for individualized education commonly referred to as a 504 Plan or an Individualized Education Plan (IEP). *G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 200 (4th Cir. 2024) (citations omitted). The procedure for putting in place an IEP for a student is set out in the Individuals with Disabilities in Education Act, 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq*. The purpose of the IEP is to "spell[] out a *personalized* plan to meet all of the child's educational needs." *Bd. of Ed. of Kanawha*, 117 F.4th at 198 (citation and internal quotation marks omitted) (emphasis added).

Thus the contradiction: the class action device is designed to adjudicate the legal claims of those similarly situated, while the IDEA and Section 504 are premised on the idea that the needs of students with disabilities are dissimilar and require individualized treatment. What to do, then, with cases like this one, where a plaintiff alleges that a school district is failing to provide the individualized education required by federal law?

While the Sixth Circuit has not specifically addressed this issue, the lesson of recent cases on this issue in other circuits, aptly surveyed in *G.T. v. Board of Education of County of Kanawha*, 117 F.4th 193 (4th Cir. 2024),[1] is that for such claims to be suitable for class treatment, the plaintiff must identify a "uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the violation." *Id.* at 203 (citation omitted). That official policy can serve as the "glue" holding together the different individual decisions by the school district such that they can "productively be litigated all at once." *Id.* at 205 (citation omitted). This analysis follows from *Wal-Mart Stores v. Dukes*, which established that in the employment discrimination context, plaintiffs typically must establish the existence of a discriminatory companywide policy to certify a companywide class. 564 U.S. at 358. Allegations that individual employees independently exercise discretion in a way that violates a statutory protection are not suitable for class treatment because in that situation "there is nothing to unite all of the plaintiffs' claims." *Id.* at 359 n.10. *See also Davis v. Cintas*, 717 F.3d 476, 488 (6th Cir. 2013) (holding that allegations of subjective hiring decisions that favored women over men were not suitable to class-wide resolution). The lesson of *Wal-Mart v. Dukes* and its progeny for the present case is that vague allegations that a school district is too stingy about providing accommodations to students with disabilities are not appropriate for class treatment, because the fact that members of the putative class all suffered a violation

---

[1] *Kanawha* involved alleged violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the IDEA, 20 U.S.C. § 1400 *et seq.* R.L.K., by contrast, only sued under the first two statutes. The Court nonetheless finds *Kanawha* and other cases involving IDEA claims to be instructive for class certification analysis. The statutory schemes in the IDEA and Section 504 are interrelated such that in various contexts analysis of a claim under the IDEA statute is relevant to analysis of that claim under the ADA and Section 504. *See, e.g. Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290-97 (5th Cir. 2005) (holding issue preclusion barred litigant from pursuing claims under the ADA and Section 504 that he previously brought under the IDEA); *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633 (6th Cir. 2008) (affirming dismissal of Section 504 claims due to failure to exhaust administrative remedies available under IDEA).

of the same legal guarantee is not enough to satisfy commonality. *See Bd. of Ed. of Kanawha*, 117 F.4th at 205.

Such vague allegations are exactly what plaintiff offers here. The deficiency is signaled by the proposed class definition, as the class consists of students "to whom Defendant has denied accommodations pursuant to a uniformly applied official policy or policies, an unofficial yet well-defined practice or practices, or a common mode of exercising discretion to deny the same." Doc. 16, PageID 157. Rule 23 "does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, so in order for her claim to be suitable for class-wide resolution, R.L.K. needed to identify a uniformly applied policy or common mode of exercising discretion, not merely assert that one exists. Her conclusory assertion that an illegal policy or practice exists at Indian Hill is clearly not adequate to satisfy the commonality requirement.

To the extent R.L.K. does identify any policy or practice employed by Indian Hill, which she does not mention in her class definition, her assertions are unsubstantiated. In the Motion, R.L.K. asserts she "alleges that a common policy drove Indian Hill's decision-making," Doc. 16, PageID 179, because she claims "the sole criteria [Indian Hill] applied to reject current and former [students' requests for accommodations] is whether [school counselor Erica] Leppert 'suspected' them of having a 'disability.'" *Id.* This asserted common policy is not supported by the evidence adduced in class discovery. As Indian Hill points out in its Response, R.L.K. cites only the answers to two interrogatories issued by Plaintiff to support this claim. Doc. 22, PageID 434–35; Doc. 16, PageID 179. By contrast, several Indian Hill staff members submitted sworn testimony that Ms. Leppert "is not involved with the decision to evaluate or grant a 504 plan to a student in most cases." Doc. 435. Ms. Leppert

herself testified that she was "not directly involved in any decision related to whether to evaluate or issue a 504 plan to Plaintiff." Doc. 22, PageID 436. R.L.K.'s assertion that Ms. Leppert is the sole decision-maker at Indian Hill with respect to accommodations does not stand up to the "rigorous analysis," *Dukes*, 564 U.S. at 351, required by Rule 23.[2]

Apart from the assertion regarding Ms. Leppert, the other common practice alleged is that Indian Hill prioritizes other goals over serving students with disabilities. *See, e.g.*, Doc. 6, PageID 69 ("Defendant's commitment to all students except for those with disabilities."). This, too, is inadequate because it is not a specific official policy of the school district that "drives the alleged violation," *Bd. of Educ. of Kanawha*, 117 F.4th at 205. The fact that Indian Hill touts on its website its academic results and fiscal responsibility is not an identified policy regarding how to determine whether students are entitled to accommodations.

Because R.L.K. did not identify a "uniform policy or practice," *Board of Ed. of Kanawha*, 117 F.4th at 207, at Indian Hill that violates the school district's statutory obligations to provide individualized education to students with disabilities, R.L.K. has failed to satisfy the Rule 23(a) requirements for class certification.[3]

## V.    CONCLUSION

R.L.K.'s allegations are not amenable to resolution on a class-wide basis. This should have been apparent to her counsel from the outset, as the vast majority of her complaint relates

---

[2]   In her Reply, R.L.K. provides snapshots of several emails between parents and Indian Hill to support her argument that she has identified a common policy employed by Indian Hill that violates students' rights. These emails assert do not provide evidence of the policy asserted by R.L.K.—i.e. that Ms. Leppert alone decides who receives accommodations—nor do they support her broad assertion that the school district employs an impermissible policy in determining whether to offer students accommodations. *See* Doc. 26, PageID 681 ("Ms. Leppert accurately states the legal standard . . . in emails to parents, and Policy 2[2]60.01A [(the Indian Hill policy governing provision of accommodations)] accurately states the law.").

[3]   Because the Motion fails on class definition and commonality, the Court will not address the other Rule 23 requirements.

solely to her own experience at Indian Hill, and it includes only brief references to district-wide policy. Because she failed to show there are questions of law and fact common to all class members, her motion for class certification is **DENIED**. Indian Hill's Motion for Leave to File Further Memoranda (Doc. 28) and its Motion to Strike R.L.K.'s Response to that Motion (Doc. 30) are **DENIED** as moot. The outstanding housekeeping motions in this matter made for the purpose of correcting previous filings (Doc. 21, Doc. 27) are **GRANTED**.

      **IT IS SO ORDERED.**

January 23, 2025

Jeffery P. Hopkins
United States District Judge